**DUBUQUE FIRE & MARINE INS. CO.**
v.
**WILSON et al.**
No. 6770.

United States Court of Appeals
Fourth Circuit.

Argued April 13, 1954.

Decided May 13, 1954.

116

Edward A. Harter, Jr., Columbia, S. C. (N. A. Turner, Turner, Harter & Padget, Columbia, S. C., and Clausen, Hirsh & Miller, Chicago, Ill., on the brief), for appellant.

Wesley M. Walker, Greenville, and C. T. Graydon, Columbia, S. C. (Paul A. Cooper, Cooper & Gary, Columbia, S. C., and Leatherwood, Walker, Todd & Mann, Greenville, on the brief), for appellees.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

SOPER, Circuit Judge.

Dubuque Fire and Marine Insurance Company, an Illinois corporation, brought this suit on October 29, 1951 against the Carl A. Wilson Insurance Agency, a South Carolina corporation, and against certain citizens of South Carolina who are agents of the company in that state, claiming that contrary to its instructions they improperly issued a fire insurance policy and committed it to a fire risk whereby it had suffered a loss of $4,525.70. This sum was made up of $3151.45, the face of an insurance

policy with interest, and the additional sum of $1374.25 for legal expenses and fees in prosecuting an action upon the policy.

The defendants answered and filed motions for summary judgment, which were granted, and this appeal followed. Certain issues of fact are disclosed by the pleadings which may be summarized as follows:

### The Complaint.

The Insurance Company has its principal office in Dubuque, Iowa, and is engaged in the business of insuring property against fire in certain states of the Union, including South Carolina. Defendants L. Jack Wilson, Florence D. Wilson and Dorothy A. Skinner did business in Richland County, South Carolina, as copartners under the name of Carl A. Wilson Insurance Agency. Defendant Carl A. Wilson Agency is a South Carolina corporation which may have assumed the assets and liabilities of the alleged partnership. The copartners were agents of the Insurance Company in Columbia, South Carolina, and were empowered under proper circumstances to issue policies of fire insurance on its behalf; and they were also policy writing agents of nine other fire insurance companies.

William R. Timmons did business as the William R. Timmons Agency, and was the principal agent of the Insurance Company at Greenville, South Carolina, and as such had general supervision over the local agents of the company including the Carl L. Wilson Insurance Agency, at the time of the acceptance of the fire risk above mentioned. Subsequently William R. Timmons died and after his death the business of the agency was continued and the assets and liabilities thereof were assumed first by Eva McDonald Timmons, his widow, and later by William R. Timmons, Jr., Jean Timmons Pelham and Charles M. Timmons, his children. Defendant T. J. Mims was the manager of the agency.

On or about January 24, 1947 Kitty Hawk, Inc., the owner of a restaurant which was about to open at the Lexington Airport near Columbia, South Carolina, made application to the Wilson Agency for fire insurance on the contents of the restaurant in the sum of $25,000. The agency agreed orally to cover the risk; but two days later, on January 26, before the agency had bound any company which it represented upon the risk, the restaurant was destroyed by fire. Prior to January 24, 1947 the agency had received notice that the Insurance Company would not insure such a risk under any circumstances. Nevertheless the agency accepted the risk as aforesaid, and on February 15, 1947, followed up its agreement to insure the risk by issuing on behalf of the Insurance Company a policy of insurance for $2500 dated January 24, 1947 and covering the contents of the restaurant which had already been destroyed. The agency also collected the premium from the insured, entered the policy upon its account with the Timmons Agency, and paid to it the premium.

The Timmons Agency received the premium and neglected or refused to return it to the Wilson Agency or to the owner of the restaurant, and failed to advise the company that the premium had been received.

In order to meet this situation the Insurance Company on May 24, 1948 brought an action in the Court of Common Pleas of Richland County, South Carolina, against the owners of the restaurant to cancel the policy. They in turn counter-claimed for the face of the policy with interest and recovered judgment against the Insurance Company in the amount of $3151.45, which was affirmed by the Supreme Court of South Carolina in Dubuque Fire & Marine Ins. Co. v. Miller, 219 S.C. 17, 64 S.E.2d 8. From the opinion of the court in this case we learn that the Wilson Agency did not in any way designate any of the ten insurance companies which it represented to be bound by the risk prior to the fire; but on January 27, 1947, after the fire, it wrote to each of the ten and suggested that the agency should issue a policy in the sum of $2500 on behalf

of each of them, thus dividing the loss equitably amongst them. Eight of the insurance companies assented to this arrangemnt but the Dubuque Company and another refused, and the suit for cancellation was brought by the Dubuque Company as above indicated. A companion suit by the tenth company resulted in a judgment in its favor for reasons not stated.

The opinion in the Dubuque case also shows that on January 27, 1947 the Wilson Agency reported the transaction to the Timmons Agency by letter which was forwarded by the latter to the home office, whereupon the Dubuque Company refused to accept the liability. The policy was issued by the Wilson Agency on February 15, 1947 before the home office repudiated the policy but after the Wilson Agency had been notified by the Timmons Agency that restaurants were on the prohibited list.

The Supreme Court of South Carolina said in its opinion in Dubuque Fire & Marine Ins. Co. v. Miller, supra, that the oral binder arising from the transaction between the Wilson Agency and the owner of the restaurant was invalid under the settled law of the state because the agency failed to designate the Dubuque or any other company to assume the risk; and it also held that the agency had no authority to execute and deliver the policy because prior to assumption of the risk it had been notified that restaurants were on the prohibited list of the company. Nevertheless the court held the company liable on the ground that it waived its right to cancel the policy and thereby ratified the unauthorized act of the Wilson Agency because the Timmons Agency, the general agent of the company, accepted and retained the premium.

Answer of the Timmons Defendants.

William R. Timmons was the sole owner and operator of the Timmons Agency, which was the general agent of the Dubuque Company during the transactions hereinbefore described, and until his death on June 22, 1948. By his last will he bequeathed his entire estate to his wife and thereafter she owned and operated the business until January 2, 1950 when she sold and transferred three-fourths of the business to her three children, William R. Timmons, Jr., Jean Timmons Pelham and Charles M. Timmons, retaining a one-fourth interest herself. T. J. Mims was an employee of the agency during the life of William R. Timmons and has continued in that capacity since his death.

The Wilson Agency, acting as local agent of the Insurance Company in Columbia, South Carolina, agreed to cover the contents of the restaurant as alleged in the complaint but before it had actually placed the risk with any company which it represented, the contents of the restaurant were destroyed by fire. As soon as the Timmons Agency received notice that the Wilson Agency had accepted the risk and before the Wilson Agency issued the policies on February 15, 1947 the Timmons Agency instructed the Wilson Agency to cancel the risk; but the Wilson Agency nevertheless issued the policies on that date.

On April 22, 1947 the Wilson Agency forwarded the premium on the Dubuque policy to the Timmons Agency and the Timmons Agency retained the premium in accordance with the customary method established by the Insurance Company for the collection and receipt of premiums that the Timmons Agency was called upon to remit to the company; and the Timmons Agency did not neglect or wilfully fail or refuse to return the premium to the Wilson Agency or to the owners of the restaurant, and did not fail to advise the company that the premium had been received; but, on the contrary, the Timmons Agency was never requested to return the premium, although it requested the Insurance Company for instructions as to how the matter should be handled.

The Timmons defendants filed a motion to dismiss the complaint supported by affidavit that Eva McDonald Timmons, the widow of William R. Timmons, qualified as executor of his estate on June 25, 1948 and gave due notice to creditors on that date, and no claim was filed by the Dubuque Company against the estate.

#### Answer of Wilson Defendants.

L. Jack Wilson, Florence D. Wilson and Dorothy A. Skinner were not copartners doing business under the name of the Carl A. Wilson Insurance Agency at the time of the transactions hereinbefore described, as alleged in the complaint. The Carl A. Wilson Agency, Inc. was formed on November 22, 1947 after these transactions took place.

At the time of these transactions the Carl A. Wilson Agency reported to and operated through the Timmons Agency which had authority to act for the Insurance Company. On January 24, 1947 the Wilson Agency agreed to cover the restaurant property above referred to, and allocated the risk to ten companies represented by the agency and issued the policy of the Dubuque Insurance Company, collected the premium thereon and reported to the Timmons Agency in the usual course of business. The allegation of the complaint that the Carl A. Wilson Agency had prior notice that the company under no circumstances would insure such a risk was denied.

The Wilson defendants also moved to dismiss the complaint and filed with the motion copies of certain proceedings in the administration of the estate of Carl A. Wilson, deceased, in the Probate Court of Richland County, South Carolina. These proceedings included a petition of Florence D. Wilson dated August 10, 1946 for the issuance to her of letters of administration on the estate of Carl A. Wilson alleging that he had died intestate on August 4, 1946 possessed of a personal estate, including an insurance business, and leaving as his only heirs his widow and two minor children, Nancy Carl Wilson and Patty Lease Wilson. Upon this petition the widow was appointed administratrix and qualified by giving bond on August 27, 1946. Thereafter an inventory and appraisement of the estate was filed and an administration account showing receipts and disbursements and a net estate of $14,421.67 of which $4,288.42 was transferred as a reserve for losses to the Carl A. Wilson Agency, a corporation, in which the widow and each of the two children had a one-third interest; and the balance of $10,133.25 was transferred to the widow individually and as guardian for the two minor children. The proceedings also included a petition of the administratrix for a final discharge dated August 15, 1947 and alleging that more than a year had elapsed since she had qualified as administratrix; that she had advertised for creditors to present their demands, and had paid out of the assets of the estate all debts presented, and was prepared to make a full accounting and distribute the balance to the persons entitled. The petition was set for hearing and final discharge was granted on December 5, 1947.

#### The Disputed Issues.

Certain disputed issues emerge from these pleadings. In respect to the part played by the Wilson Agency, there is the crucial question whether the agency was notified before accepting the risk that restaurants were on the prohibited list of the Insurance Company. Also disputed are the allegations of the complaint that a partnership consisting of L. Jack Wilson, Florence D. Wilson and Dorothy A. Skinner operated the Wilson Agency and issued the policy to the restaurant, as well as the statement that the incorporated Wilson Agency assumed the assets and liabilities of the partners.

With respect to the Timmons Agency, the important questions are raised whether the agency neglected or refused to return the premium to the insured or to advise the Insurance Company that the premium had been received, as alleged in the complaint, or whether as alleged in the Timmons answer, the premium was handled in accordance with the method of doing business etablished by the Insurance Company and the company failed to instruct the agency as to how the premium should be handled, and also whether the Timmons defendants assumed the assets and liabilities of the agency after the death of William R. Timmons.

The action of the District Court in dismissing the complaint did not reach

these questions and was not based on the merits of the case. The dismissal was based on three grounds, namely: (1) that the decision of the court in Dubuque Fire & Marine Ins. Co. v. Miller, supra, disposed of the issues raised by the company in the instant case; (2) that the action in the instant case arises in tort and so far as the Timmons defendants are concerned, did not survive the death of William R. Timmons who owned and operated the Timmons Agency when the restaurant policy was issued; and (3) that the action is barred as to both sets of defendants because the claim as to the Timmons defendants was not asserted against the estate of William R. Timmons, and because the claim against the Wilson defendants was not asserted against the estate of Carl A. Wilson whose administratrix was operating the Wilson Agency when the risk was assumed.

■ We think that none of these grounds justifies the order of dismissal. In the first place it is clear that the State Supreme Court did not attempt to adjudicate the liability of the defendants to the Insurance Company for improper action in regard to the issuance of the policy and the retention of the premium, but confined itself entirely to the liability of the Insurance Company to the insured.

■ The defense that the action lies in tort and therefore does not survive the death of William R. Timmons, as respects the Timmons defendants, is also untenable. It is true that the common law rule that there is no survival of actions in tort is in effect in South Carolina, subject to certain qualifications. It has been modified in that state by statute which provides for the survival of causes of action for injuries to real estate as well as injuries to the person or personal property, § 10–209 S.C.Code of 1952; it does not apply if the wrong has resulted in some gain or advantage to the wrongdoer, Halsey v. Minnesota-South Carolina Land & Timber Co., D.C.E.D.S.C., 54 F. 2d 933, and cases cited therein; and as a general rule, it has not been applied to cases in equity, and actions for the re-scission or cancellation of a deed or contract for fraud descend to the heirs of the person wronged. Page v. Lewis, 203 S.C. 190, 193, 26 S.E.2d 569.

■ In the case last cited the harshness and injustice of the common law rule is recognized and it is laid down that the nature and substance of the action rather than the form of the remedy determine its ability to survive. There can be no doubt that the transactions complained of in the present case grew out of the contractual relationship of principal and agent between the Insurance Company, on the one hand, and the Timmons and Wilson Agencies on the other. While the terms of the contracts are not set out, it may fairly be inferred that the agencies were under a contractual duty to carry on the business of the company in obedience to its rules and regulations, and its instructions in particular cases. See Westchester Fire Ins. Co. v. Bollin, 106 S.C. 45, 90 S.E. 327. The allegations of the complaint that the Wilson Agency wilfully and without authority issued the policy and collected the premium and that the Timmons Agency neglected or refused to return the premium clearly set out breaches of the contract and constitute a proper basis for an action in contract, even though they would also support an action in tort. The pleader may make his choice in such a case and it is obviously the duty of the court to permit him to exercise this privilege and not compel him to take the course which would destroy his right of action. See Restatement of Agency, §§ 399, 400, 401; 2 Amer.Jur., Agency, § 423; 1 C.J.S., Abatement and Revival, § 137(b); Lyles v. McFie's Adm'rs, 1 McMul., S.C., 21; Elam v. Smithdeal Realty & Ins. Co., 182 N.C. 599, 109 S.E. 632, 18 A.L.R. 1210.

■■ The contention of the defendant that the Insurance Company lost the right of recovery because it failed to assert claims against the estates of Carl A. Wilson and William R. Timmons is not supported by the decisions of the South Carolina courts. We had occasion to examine this question in Muckenfuss v.

Marchant, 4 Cir., 105 F.2d 469, and reached the conclusion that in South Carolina the primary source to which a creditor of an estate must look for payment is the personal estate of the deceased in the hands of his personal representative; but that after the distribution of the estate a creditor, who has failed to file his claim, may collect from the heirs or distributees of the estate to the extent that they have received assets therefrom. The statutes requiring the representatives of an estate to give notice to creditors are designed for the personal protection of executors and administrators, and do not bar a creditor who fails to comply with the statutes from enforcing his claim against the persons into whose possession the assets of the estate have come. See McNair v. Howle, 123 S.C. 252, 264, 269, 116 S.E. 279; Columbia Theological Seminary v. Arnette, 168 S.C. 272, 278, 167 S.E. 465; S.C.Code 1952 §§ 19–473 to 19–475 and notes.

It will have been noticed that assets from both the Timmons and Wilson estates have passed to distributees who are defendants in this case. In the Wilson estate a final distribution has taken place to Florence D. Wilson, the widow of the deceased, a party defendant, and to two minor children who are not parties to the suit. The record does not show whether the Timmons estate has been finally settled or not; but pleadings filed on behalf of the Timmons defendants assert that the entire estate was devised and bequeathed to his wife; that she qualified as executor and gave notice to creditors on June 25, 1948, and after his death owned and operated the business of the Timmons Agency individually un-

til January 2, 1950 when, prior to the institution of this suit, she sold three-fourths of the business to her three children, all of whom are parties to this suit. What proceedings were taken by the executrix in the Probate Court are not disclosed but it may fairly be inferred from the allegation that Mrs. Timmons has taken over the business, that some distribution has taken place.

It is not an incurable defect that the personal representatives of the estate have not been made parties to the suit in accordance with the practice approved in McNair v. Howle and Columbia Theological Seminary v. Arnette, supra. The administratrix of the Wilson estate and the executor of the Timmons estate are now parties defendant to the suit in their individual capacities, and since the judgment of the District Court must be reversed and the case remanded for further proceedings, it will be a simple matter to bring them in in their representative capacities by amendments to the complaint. It is entirely proper to join the personal representative and the distributees of the estate as parties defendant in the same action. McNair v. Howle, supra, 123 S.C. at page 264, 116 S.E. 279. In the further proceedings in the District Court the right of the Insurance Company to recover, and the liabilities, if any, of the defendants may be determined on the merits with full opportunity to the parties to make such amendment to the pleadings and to advance such contentions in support of their respective positions as they may see fit.

The judgment of the District Court is reversed and remanded.

Reversed and remanded.