**FEDERAL DEPOSIT INSURANCE CORPORATION, Plaintiff,**

v.

**Vermelle Roland FAGAN, Executrix and distributee of the Estate of Wylie H. Fagan, Deceased, and Scott M. Waldron, Defendants.**

**Civ. A. No. 76–1157.**

United States District Court, D. South Carolina, Columbia Division.

Nov. 6, 1978.

---

**934**

Manton M. Grier, Columbia, S. C., for plaintiff.

Robert G. Price, Columbia, S. C., for defendants.

### ORDER

BLATT, District Judge.

This matter comes before the court on motions of the defendant, Fagan, for summary judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure, one motion being made in her capacity as Executrix of the Estate of Wylie H. Fagan, and the other being made in her capacity as sole distributee of the Estate of Wylie H. Fagan. Both motions raise essentially the same questions and can be disposed of together. Oral arguments were heard on August 16, 1977, and March 17, 1978, and memoranda of law have been submitted.

Plaintiff is the owner and holder of a certain guaranty agreement executed by Scott M. Waldron[1] and Wylie H. Fagan, since deceased, in favor of American Bank and Trust Company of Orangeburg, South Carolina to secure the debts of Terra Corp., Inc. The two guarantors were apparently the principal owners of the corporation. Plaintiff is presently liquidating American Bank and Trust and purchased the guaranty agreement and the debts of Terra Corp. pursuant to corporate powers given to it by federal statute.

The plaintiff is seeking to assert a claim against Vermelle Roland Fagan as Executrix and as sole distributee of the Estate of Wylie H. Fagan on account of the aforementioned guaranty agreement. The plaintiff does not dispute the fact that its predecessor in interest, American Bank and Trust, failed, as required by South Carolina Code § 21–15–640 (1976), to file a claim with the Executrix within five (5) months after the Executrix published a notice for creditors to render accounts.

The sole issue for determination on both motions is whether South Carolina Code § 21–15–640 operates to completely extinguish the plaintiff's claim because such claim was not filed within the time provided, thus preventing plaintiff from proceeding against estate assets that have been distributed, or that are available for distribution, to Vermelle Roland Fagan as sole *distributee* of the estate.[2] The opinion of the Fourth Circuit Court of Appeals in *Dubuque Fire & Marine Insurance Co. v. Wilson,* 213 F.2d 115 (4th Cir. 1954) would appear to answer that question in the negative, but the parties have argued strenuously concerning the correctness of that deci-

1. Defendant Scott M. Waldron declared personal bankruptcy shortly after the institution of this litigation, and he is no longer a party to this action.

2. It is conceded that South Carolina Code § 21–15–650 (1976) protects Vermelle Roland Fagan as *Executrix* from personal liability.

That section provides:
"§ 21–15–650. *No liability if creditor neglects to give statement.*
    If any creditor shall neglect to give in a statement of his debts within the time aforesaid the executors or administrators shall not be liable to make good the same."

sion. Because of the matters involved in that decision hereinafter discussed, this court has examined the history of the disputed code sections. Since this court is bound by the decisions of the Court of Appeals of this Circuit until such decisions are changed, the instant discussion *necessarily* is dicta, but dicta hopefully intended for the enlightenment of those who may subsequently pass authoritatively on the question before this court.

A complete background explanation of the controversy here can satisfactorily commence early in this century with the 1912 Code of Laws of the State of South Carolina—(although the provisions here discussed trace their roots to 1789). The 1912 Code contained two provisions with which the court is concerned:

"§ 3630. *Notice to Creditor to Render Accounts—Debts Ascertained within a Year.*—Every executor or administrator shall give three weeks' notice, by advertisement in one of the gazettes printed in the County, or if there be none, in some gazette of general circulation in the County, for creditors of the estate in his charge to render an account of their demands, duly attested, and he shall be allowed twelve months to ascertain the debts due from the deceased, reckoning from probate of will or grant of administration.

§ 3631. *If Creditor Fail to Render Account, Executors or Administrators Not Liable.*—If any creditor shall neglect to give in a statement of his debts within the time aforesaid, the executors or administrators shall not be liable to make good the same."

As can be seen from these two sections, the first provided the mechanics for the giving of notice by an executor or administrator to creditors of the estate—(hereinafter referred to as the "notice provision") —while the second provided for protection for the executor or administrator from claims of tardy creditors once such notice

was given—(hereinafter the "personal protection provision"). The language which was to become critical in *Dubuque* did not exist in 1912.

For the sake of brevity, it will suffice to say that the 1922 Code contained without change the above two sections as Sections 5407 and 5408, respectively. In 1923, the Supreme Court of South Carolina had occasion to construe § 3631 of the 1912 Code[3] in the case of *McNair v. Howle*, 123 S.C. 252, 116 S.E. 279, 285 (1923). In *McNair*, that Court, in an eminently sound decision, read the plain language of § 3631 to provide personal protection for the estate representative, but held that a creditor, barred by that section from suing the representative, was not prevented from proceeding—(in the absence of laches)—against the assets of the estate which had been distributed but which could be located and identified. As the Supreme Court said: "We have no statute of nonclaim in this state . . . ", and at least, *at that time*, the statement was unimpeachable.

The 1932 Code of Laws of South Carolina again contained identical provisions as follows:

"§ 8993. *Notice to Creditor to Render Accounts—Debts Ascertained within a Year.*—Every executor or administrator shall give three weeks' notice, by advertisement in one of the gazettes printed in the county, or if there be none, in some gazette of general circulation in the county, for creditors of the estate in his charge to render an account of their demands, duly attested, and he shall be allowed twelve months to ascertain the debts due from the deceased, reckoning from probate of will or grant of administration.

§ 8994. *If Creditor Fail to Render Account, Executors or Administrators Not Liable.*—If any creditor shall neglect to give in a statement of his debts within the time aforesaid, the executors or administrators shall not be liable to make good the same."

---

**3.** Apparently, this 1923 case arose before the recodification and renumbering of the affected sections in the 1922 Code, hence the references

in that case are to the 1912 Code, although the sections were exactly the same in both Codes.

Section 8993 was the "notice" provision while § 8994 was the "personal protection" section. In the same year, the Supreme Court of South Carolina was presented with the exact question it had faced in *McNair v. Howle, supra,* and relying on that case, it reached the same result. *Columbia Theological Seminary v. Arnette,* 168 S.C. 272, 167 S.E. 465 (1932). In 1939, the Fourth Circuit Court of Appeals was presented with the identical question and it followed the *McNair* and *Columbia Theological Seminary* cases in *Muckenfuss v. Marchant,* 105 F.2d 469 (4th Cir. 1939). Thus, in 1939, it was clear that South Carolina did not have a *non-claim* [4] statute, and that a creditor of a deceased debtor could, notwithstanding § 8994, pursue his claim against assets passed to distributees of the estate.

In 1943, an event occurred which apparently went unnoticed by the Fourth Circuit Court of Appeals in its later opinion in *Dubuque Fire and Marine Insurance Co.,* 213 F.2d 115 (4th Cir. 1954). In that year, between the 1942 and 1952 recodifications of the Code, the South Carolina Legislature approved Act # 177 (43 Stat. 260 (1943)):

"An Act to Amend Section 8993, Code of Laws of South Carolina, 1942, So as to Fix the Time within Which Executor and Administrator Shall Advertise for Claims, and *to Provide for the Barring of Claims Not Filed with the Executor or Administrator of Probate Judge within the Period Therein Provided.* (emphasis added)

. . . . .

SECTION 1: § 8993, 1942 Code, amended—executors and administrators advertise for creditors—time determine debts due by deceased—time creditors file claims.—That Section 8993, Code of Laws of South Carolina 1942, be, and the same is hereby amended by striking out all of said Section 8993, and inserting in lieu thereof the following:

Section 8993(a) Every executor or administrator shall, within thirty (30) days after qualifying as such, or as soon there-

after as may be practicable, give notice by advertisement once a week for three consecutive weeks in a newspaper printed in the county in which the estate in his charge is being administered, or, if there be no newspaper printed in such county, in a newspaper of general circulation in such county, for creditors of the estate in his charge to render an account of their demands, duly attested, and he shall be allowed twelve months to ascertain the debts due from the deceased, reckoning from the date of his qualifications as such executor or administrator.

(b) *All claims of creditors of such estate shall, upon the expiration of eleven months after the first publication of the notice prescribed in subsection (a), be forever barred unless before the expiration of such period an account thereof, duly attested, shall have been filed with such executor or administrator,* or with the Judge of Probate of the county in which such estate is being administered; PROVIDED, HOWEVER, that the provisions of this sub-Section (b) shall not apply to obligations secured by mortgages or other liens which have been duly recorded prior to the expiration of such period." (emphasis added).

. . . . .

It is clear that Act # 177 amended the "notice" provision of the 1942 Code (§ 8993) but did not, in any way, affect the "personal protection" provision of that Code—(§ 8994). Act # 177 substantially repeated "old" § 8993 as "new" § 8993(a), *and added an entirely new provision as § 8993(b).* This section, containing the "forever barred" language is the focus of this court's attention in the instant matter.

In the 1952 decennial recodification, the drafters divided "new" § 8993 into two sections, with the "notice" provision (§ 8993(a)) becoming § 19–473 (1952) and the "forever barred" provision (§ 8993(b)) becoming § 19–474 (1952). The "personal protection" section (§ 8994) continued without change,

---

4. As used in this opinion, the term "non-claim statute" refers to a statute absolutely preventing suit by a creditor against assets of a de-

ceased debtor in anyone's hands. It is, therefore, functionally similar to a statute of limitations.

but was renumbered as § 19–475. The official Code reporter made a critical error which probably misled our Court of Appeals two years later. In the official comments to the 1952 Code, the reporter listed the "forever barred" section (§ 19–474) as a successor to the "notice" provisions of the earlier Codes, when in fact this provision was entirely new as of 1943—(as § 8993(b))—*and did not exist in any earlier Code.* Hence, this section could not have been construed by the South Carolina Supreme Court prior to 1943 although the reporter's notes indicate to the contrary.

Following the recodification in 1952, the Court of Appeals for the Fourth Circuit was once again confronted in *Dubuque, supra,* with the question it had faced in 1939 in *Muckenfuss, supra.* The depth of the court's reasoning and investigation into events which had transpired since *Muckenfuss* is illustrated by the following quotation which constitutes the complete study given by the Court of Appeals to this question: .

"The contention of the defendant that the Insurance Company lost the right of recovery because it failed to assert claims against the estates of Carl A. Wilson and William R. Timmons is not supported by the decisions of the South Carolina courts. We had occasion to examine this question in *Muckenfuss v. Marchant,* 4 Cir., 105 F.2d 469, and reached the conclusion that in South Carolina the primary source to which a creditor of an estate must look for payment is the personal estate of the deceased in the hands of his personal representative; but that after the distribution of the estate a creditor, who has failed to file his claim, may collect from the heirs or distributees of the estate to the extent that they have received assets therefrom. The statutes requiring the representatives of an estate to give notice to creditors are designed for the personal protection of executors and administrators, and do not bar a creditor who fails to comply with the statutes from enforcing his claim against the persons into whose possession the assets of the estate have come. *See,*

*McNair v. Howle,* 123 S.C. 252, 264, 269, 116 S.C. 279; *Columbia Theological Seminary v. Arnette,* 168 S.C. 272, 278, 167 S.E. 465; S.C.Code 1952 §§ 19–473 to 19–475 *and notes.*" (emphasis added).

It is important to note that the court specifically relied on the erroneous reporter's notes to Section 19–474 in its decision, and never realized the status of § 19–474 as being a different provision in the Code which had been enacted after the state cases on which the Court of Appeals relied were decided, and had been present in the Code for eleven years before the 1954 decision in *Dubuque.* An issue of the novelty, closeness and importance to the parties which that appeal presented would certainly have been deserving of more complete review had the court realized that the law had been changed.

The decision in *Dubuque* brought heated criticism from the truly outstanding and scholarly dean of South Carolina estate law, Professor Coleman Karesh of the University of South Carolina Law School faculty, who cogently analyzed that opinion and concluded that it had a "fatal weakness" and was in "patent error." 8 *SCLQ* 162 (1955). Looking to the 1943 enactment of Act # 177, which became § 19–474, Professor Karesh concluded that § 19–474 clearly *was* a nonclaim statute barring tardy creditors from pursuing estate assets into the hands of a distributee, and that § 19–474 should be so construed by state courts, notwithstanding the error of the Fourth Circuit Court of Appeals. Apparently, at least some state courts have taken Professor Karesh's advice, for in *Wallace v. Timmons,* 232 S.C. 311, 101 S.E.2d 844 (1958), the lower court held that an action by a creditor not filed within the time period specified in § 19–474 (1952) was barred absolutely. The South Carolina Supreme Court, however, did not reach the issue in that case, but instead found § 19–474 inapplicable there because, for the purposes of the demurrer under appeal, the case concerned monies being held by the decedent in trust for the plaintiff and, therefore, the court held that the plaintiff was not a "creditor" of the decedent. Thereafter, in 1964, the

Attorney General of South Carolina, in a published opinion, speaking of the purpose of § 19–474 declared that:

"The only import that can be gained from a careful study of the legislative history and pertinent decisions is that the legislative intent . . . was that this State should have a nonclaim provision." 1964 Op.Atty.Gen'l. 296, 298.

The Attorney General discussed the cases cited herein, including Dubuque, in reaching his conclusion, and he found especially persuasive the 1961 action of the State Legislature in reinserting the "forever barred" language in the statute after it had been inadvertently omitted in 1956—(49 Stat. 1787)—two years after Dubuque. That 1961 amendment provided in its title that the purpose of the amendment was "to provide that claims not filed within the specified time limit shall be barred" (52 Stat. 172).

The State Code has been re-enacted twice since Dubuque (1962, 1976) but the relevant language of the statutes under consideration is the same as it was when Dubuque was decided.[5] The "notice" provision is now § 21–15–630 (1976), the "forever barred" section is § 21–15–640 (1976), and the "personal protection" section is § 21–15–650 (1976). A review of the three sec-

tions clearly reveals that the Dubuque interpretation of § 21–15–640 would render § 21–15–650 superfluous if the former only provides "personal protection" since the latter expressly provides such protection.

Besides the apparent duplication that is engendered by the Dubuque interpretation of § 21–15–640, that analysis is inconsistent with recent South Carolina Supreme Court interpretations of the phrase "forever barred." For instance, in Robertson v. Brissey's Garage, Inc., S.C., 240 S.E.2d 810 (1978), the court considered a Workman's Compensation statute which provided that the right to compensation "shall be forever barred unless a claim is filed with the Commission within two years after the accident" (§ 42–15–40 (1976)). The court cited a long line of cases which have held that section to be a statute of limitations, but decided that the defendant there was estopped to assert the "statute of limitations" (at 811). Although that decision is not controlling here, since it construed a different section of the South Carolina Code, it does indicate to this court that a fresh analysis of the Dubuque conclusion would be fruitful in light of the differing constructions given the term "forever barred" in the two opinions.

5. The only substantive change in the language important here—(other than the 1956 removal and 1961 re-insertion of the "forever barred" language)—has been in § 21–15–640 (1976) where the time period for filing against the estate was reduced from 12 months after first publication of published notice to 5 months from that date. The three sections as they now appear, and read—(except for certain time changes and clerical changes)—in 1954 are:

§ 21–15–630. Notice to creditors; time allowed for ascertainment of debts.

Every executor or administrator shall, within thirty days after qualifying as such or as soon thereafter as may be practicable, give notice by advertisement once a week for three consecutive weeks in a newspaper printed in the county in which the estate in his charge is being administered or, if there be no newspaper printed in such county, in a newspaper of general circulation in such county for creditors of the estate in his charge to render an account of their demands, duly attested, and he shall be allowed six months to ascertain the debts due from the deceased, reckoning from the date of his

qualification as such executor or administrator. Such executor or administrator shall, within two weeks after the publication of the final notice to creditors, file an affidavit with the probate court setting forth the name of the newspaper and dates of the publication. § 21–15–640. Claims not filed within five months shall be barred.

All claims of creditors of such estate shall upon the expiration of five months after the first publication of the notice prescribed in § 21–15–630 be forever barred unless, before the expiration of such period, an account thereof, duly attested, shall have been filed with such executor or administrator or with the judge of probate of the county in which such estate is being administered. But the provisions of this section shall not apply to obligations secured by mortgages or other liens which have been duly recorded prior to the expiration of such period.

§ 21–15–650. No liability if creditor neglects to give statement.

If any creditor shall neglect to give in a statement of his debts within the time aforesaid the executors or administrators shall not be liable to make good the same.

While the plain language of § 21–15–640, its legislative history, the continued presence in the Code of § 21–15–650, the article by Professor Karesh, the opinion by the Attorney General of South Carolina, analagous interpretations of the phrase "forever barred" by the South Carolina Supreme Court, and the State Circuit Court opinion in *Wallace v. Timmons, supra,* all support the position that the Fourth Circuit Court of Appeals may have erred in *Dubuque,*[6] this court is a court of *stare decisis.* Although trial judges are duty bound to follow precedents set by appellate courts, it seems appropriate that this obligation should carry with it a correlative right to comment, and perhaps even to complain, regarding those precedents. (*See, Shaffer v. Coty, Inc.,* 183 F.Supp. 662, 668 (S.D.Cal. 1960). Any attempt to skim over the serious difficulties with the *Dubuque* analysis would expose this court to the type of criticism best expounded long ago by a disgruntled observer of the legal system:

> "It is a maxim among these men, that whatever has been done before may legally be done again; and therefore they take special care to record all the decisions formerly made, even those which have through ignorance or corruption contradicted the rule of common justice and the general reasons of mankind. These under the name of precedents, they produce as authorities and thereby endeavor to justify the most iniquitous opinions . . . ." Swift, *Gulliver's Travels.*

■ The preceding discussion is not intended to indicate that a determination that § 21–15–640 is a nonclaim statute would be a panacea. This court does not necessarily agree with the policy that allows creditors of a living person six years to sue on a debt—(§ 15–3–530 (1976))—while allowing creditors of a deceased person only five months to act to recover payment from such person's estate (§ 21–15–640 (1976)). That policy has, however, apparently been instituted by the plain language of § 21–15–640, and it is for the Legislature of South Carolina to rectify any inequities that may exist. A more serious concern is the possibility that under the legal principles established in *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950), a combination of § 21–15–630—(providing for published notice to creditors to render their demands)—and an interpretation of § 21–15–640 opposite to that in *Dubuque*—(barring noncomplying creditors from satisfaction for their debts from estate assets)—may indicate a violation of the Due Process Clause of the Fourteenth Amendment as to those creditors whose names and addresses are known to the representative of the estate. *Mullane* held that in settling a trust, the trustee must notify beneficiaries whose names and addresses were known to him *individually,* but that *publication* would suffice for unknown beneficiaries. While it may be that a trustee stands in a different position from a personal representative, the language of the United States Supreme Court strongly indicates that where a representative is aware of the existence and location of specific creditors, published notice would be insufficient. Since this court is bound by *Dubuque,* it does not now reach this question, but proposes it as an illustration of a possible deficiency in § 21–15–630. While a court should construe a state statute to avoid constitutional infirmity, here the intention of the Legislature appears to envision absolute protection for the estate in § 21–15–640. A court should not avoid decision on a difficult issue to spare the Legislature the task of correcting the possible constitutional deficiency. In the present case, even if § 21–15–630 were unconstitutional under *Mullane*—(and this court expresses no opinion on that issue)— the Legislature could readily correct the problem with a short insertion therein to the effect that "known creditors should receive individual notices." Based on the foregoing, it is

---

6. This court notes that its distinguished colleague, for whom it has the greatest respect and admiration, followed *Dubuque* without discussion in *Philadelphia National Bank v. Chicago Title Insurance Co.,* 76–2442 (D.S.C. 8/18/77, Hemphill, J.) However, it is apparent that the parties did not argue the merits of *Dubuque* in that case.

**940**

ORDERED, that the motion for summary judgment in favor of the defendant Fagan in her capacity as executrix be, and the same hereby is, granted.

IT IS FURTHER ORDERED, that the motion for summary judgment in favor of the defendant Fagan in her capacity as sole distributee of her husband's estate be, and the same hereby is denied.

IT IS FURTHER ORDERED, that since this decision involves a controlling question of law as to which there are substantial grounds for difference of opinion and that immediate appeal from this Order may materially advance the ultimate termination of this litigation, the defendant is hereby granted the right to seek immediate relief, if she be so advised, in the Court of Appeals for the Fourth Circuit, (28 U.S.C. § 1292(b)), and, pending the seeking of such relief, further proceedings in this court are hereby stayed.[7]

AND IT IS SO ORDERED.

---

**7.** Since this court has certified the *Dubuque* issue as a controlling question of law whose resolution may terminate this matter, it does not now reach the other issue in this case which concerns § 21–17–10, et seq. The question has been raised whether § 21–17–10 sets out requirements to be followed by certain creditors proceeding against estate assets in the hands of distributees, but this issue only becomes viable if § 21–15–640 is not a complete bar to such actions. If the Fourth Circuit Court of Appeals reaffirms *Dubuque*, the court will then pass on this question.