**UNITED STATES of America,
Plaintiff,**

v.

**Thomas Bradford POSTON, Defendant.**

**Crim. A. No. 69–204.**

United States District Court,
D. South Carolina,
Columbia Division.

April 29, 1970.

Joseph O. Rogers, U. S. Dist. Atty., Columbia, S. C., by Marvin L. Smith, Asst. U. S. Atty., Columbia, S. C., for plaintiff.

Jasper M. Cureton, Broadwater, Cureton & Felder, Columbia, S. C., for defendant.

## ORDER

SIMONS, District Judge.

Defendant was charged with violating Title 50, U.S.C.App., Section 462[1] by an

---

1. Title 50, U.S.C.App., Section 462, provides in pertinent part as follows:

 "Offenses and penalties

 "(a) Any member of the Selective Service System or any other person charged as herein provided with the duty of carrying out any of the provisions of this title * * * or the rules or regulations made or directions given thereunder, who shall knowingly fail or neglect to perform such duty * * * or who otherwise evades or refuses registration or service in the armed forces or any of the requirements of this title * * * or who in any manner shall knowingly fail or neglect or refuse to perform any duty required of him under or in the execution of this title, or

Indictment filed September 3, 1969 in which it was alleged that the defendant unlawfully, knowingly, and wilfully refused to submit to induction into the Armed Forces of the United States on the 3rd day of February, 1969. The defendant waived trial by jury and requested that he be tried by the court, which request was concurred in by the prosecution. Accordingly, the defendant was afforded a trial by the court in Columbia, South Carolina on October 23, 1969 at which time he was represented by privately employed counsel.

Prior to the trial the defendant's motion to dismiss the Indictment was denied by the court on October 7, 1969. At the commencement of his trial on October 23rd, the defendant moved for judgment of acquittal upon the same grounds as were contained in his motion to dismiss the Indictment. Such motion was overruled and the case proceeded to trial.

Defendant stipulated in writing that he had refused to be inducted into the Armed Forces of the United States; that he was duly advised that his refusal to submit for induction constituted a violation of the law; and that after being so informed he again refused to be inducted into the Armed Forces. He further agreed that such stipulation should be introduced in evidence at his trial as proof of the facts therein stated. (See Government's Exhibit No. 1).

At the trial the court heard such witnesses and received such exhibits as were tendered by the prosecution and defense, including the entire selective service file of Local Board No. 40, Columbia, South Carolina, with whom defendant was duly registered under the Selective Service System.

In accordance with Rule 23 of the Federal Rules of Criminal Procedure defendant requested the court to find the facts specially. In accordance therewith the court makes the following:

## FINDINGS OF FACT

Defendant first registered with South Carolina Local Board No. 40 of the Selective Service System, Columbia, South Carolina (hereinafter referred to as the Board) on October 10, 1960. Thereafter, on November 15, 1960 the Board mailed defendant a classification questionnaire (SSS Form 100) which was returned by him to the Board on November 25, 1960. On this form in Series VIII which contains a space for claiming conscientious objection to military service the defendant inserted in this item "Doesn't apply."

Defendant graduated from the University of South Carolina in 1965, having majored in psychology. While in college he participated in the ROTC program in lieu of engaging in the alternative physical education program. He also was active in various extra curricular activities including the Baptist Student Union, the YMCA, the South Carolina Religious Council, the South Carolina School Council on Human Relations, a social fraternity, the NAACP, Kappa Sigma Kappa and Omicron Delta Kappa, the latter two being honorary service fraternities.

After graduating from college he was a volunteer worker for the Columbia Draft Information Center and a co-editor of its newsletter publication SUPPORT. A copy received in evidence during the trial indicates that such publication is strong in its opposition both to the draft and to the war in Vietnam. At trial defendant testified that he was familiar with the laws and regulations of the Selective Service System, that he counseled others on the subject of the draft, and had numerous contacts with local draft boards concerning draft matters in which the Columbia Draft Information Center was interested between

rules, regulations, or directions made pursuant to this title * * * shall, upon conviction in any district court of the United States of competent jurisdiction, be punished * * *."

590

the period from about December 1968 until February 1969.

While attending the University of South Carolina on January 7, 1964 defendant was classified II–S, and he continued to be so deferred until after his graduation in 1965. On August 17th of that year he was classified I–A by the Board, on September 17, 1965 was found physically qualified for military duty, and was subsequently on September 29, 1965 ordered to report for induction on October 22, 1965 (SSS Form 252). This action was taken after the Board on September 15, 1965 had received a request from the National Association of Inter-group Relations officials asking that defendant be deferred. The Board's first induction order of September 29, 1965 was subsequently cancelled and defendant's file was forwarded to the State Appeal Board which also classified him I–A on October 20, 1965 by unanimous vote.

Defendant was again ordered to report for induction but this order was cancelled as a result of an appeal taken by the National Director of Selective Service to the Presidential Appeal Board which classified him II–A on January 25, 1966 for six months or until his occupation changed.

On August 16, 1966 defendant was classified II–A for service in the Peace Corps which was to be continued for two years until August 16, 1968. However, on December 28, 1967 the Board received a current information questionnaire (SSS Form 127) which indicated that he was at that time unemployed. Accordingly, on January 23, 1968 the Board classified him I–A, and on January 25th he was notified of this classification, of his right of personal appearance and appeal, and the availability of a Government Appeal Agent.

On February 7, 1968 he notified the Board that he was then employed by the Richland-Lexington County Office of Economic Opportunity. Thereafter on February 21st the Board received an undated letter from defendant in which he stated: "I am appealing my I–A classification of January 25, 1968 for medical reasons. Within the week you will be receiving the examination report from my doctor."

Thereafter, the Board notified defendant by letter dated March 4, 1968 that he was being ordered for another armed forces physical examination and if found acceptable his appeal would be processed by the State Appeal Board, and if found not acceptable he would be classified on that basis. On March 11, 1968 the Board ordered defendant to report for physical examination on March 25, 1968. He reported as ordered and at the request of the examining station he was then ordered for an orthopedic consultation on April 9, 1968. On April 10, 1968 he was found fully qualified for military service and the Board was so notified by the examining station on May 1, 1968, and on that date it mailed a copy of Statement of Acceptability (DD Form 62) to defendant.

In the meantime, by his letter dated April 14, 1968 defendant wrote the Board as follows: "In the event that I maintain my I–A status after my physical on April 9th, I would like to appeal to the State Appeals Board of the Selective Service. Would you please send immediately an application form for conscientious objection." The Board mailed to him the special conscientious objector form (SSS Form 150) on April 16, 1968, which he returned to the Board on April 26, 1968 with a letter of transmittal. A true copy of defendant's executed form 150 and his transmittal letter are attached hereto as Exhibit "A".

On May 14, 1968 the Board reopened his classification, denied his request for conscientious objection classification without assigning or stating any reason therefor, reclassified him I–A,[2] and on

2. The Minutes of the Board Meeting of May 14, 1968 contained the following:

"SSS 150's were reviewed in the files of Thomas B. Poston, 42–935 and Peter

May 15, 1968 mailed to defendant Notice of Classification (SSS Form 110) and Advice of Right to Personal Appearance and Appeal (SSS Form 217). Thereafter, on May 21, 1968 the Board advised defendant that his file has been forwarded to the State Appeal Board for adjudication and informed him in accordance with SS Regulation 1626.24(b) that any additional information which he felt would have a bearing on his appeal of classification should be forwarded by him to the Board and not to the State Appeal Board. On June 12, 1968 the State Appeal Board by unanimous vote classified him I–A and he was duly notified of such classification on June 17, 1968.

By his letter dated June 21, 1968 defendant advised the Local Board that: "I will be entering VISTA (Volunteers In Service To America) on June 27, 1968 for a year. I am requesting a deferment for this period of time." On June 24, 1968 the Board reviewed his file but refused to reopen the classification for this purpose and mailed to defendant an Order to Report for Induction (SSS Form 252) with a reporting date of July 15, 1968. His impending induction was thereafter postponed by the State Director of the Selective Serv-

ice System on July 8, 1968. On July 12, 1968 the Board received notice that defendant had begun a training program with VISTA. On July 29, 1968 the State Director of Selective Service appealed to the Presidential Appeal Board, and on August 1, 1968 defendant was notified of such appeal and the cancellation of his induction order.

On September 6, 1968 defendant was classified I–A by the Presidential Appeal Board and notice of this action and his I–A classification was mailed by the Board to defendant on September 16, 1968.

By letter of September 20, 1968 the Board then ordered defendant to report for induction (SSS Form 252) on October 28, 1968. In the meantime by his letter dated October 8, 1968, defendant submitted records of treatment by Dr. C. E. Morgan, Medical Advisor to the Board and by Dr. Thomas E. Edwards, an orthopedic surgeon, and wrote the Board as follows: "I am asking that my induction date be postponed. I am also asking for a medical re-evaluation and reopening of my classification under Section 1625.2(b)."[3] Thereafter, on October 9, 1968, the Board postponed his induction until November 28, 1968.

---

Linden, 43–567. Both were classified I–A and both files were sent to the Appeals Board."

Mrs. Clegg, the Board's Executive Secretary, testified at trial that "the word 'review' means in any instance that any information is reviewed by a Board member or Board members. 'Review' means to read the information and carefully *consider it.*" *It is noted that the defendant failed to provide the Local Board any supporting letters or information other than his completed SSS Form 150 and his letter of transmittal (Exhibit "A" attached). He did not furnish any written statements of his associates testifying as to his religious beliefs and his sincerity.*

3. Section 1625.2(b) :

"The local board *may reopen* and consider anew the classification of a registrant (a) upon the written request of the registrant, the government appeal agent, any person who claims to be a dependent of the registrant, or any person who has on file a written request

for the current deferment of the registrant in a case involving occupational deferment, *if such request is accompanied by written information presenting facts* not considered when the registrant was classified, which, if true, would justify a change in the registrant's classification; or (b) upon its own motion if such action is based upon facts not considered when the registrant was classified which, if true, would justify a change in the registrant's classification; provided, in either event, the classification of a registrant *shall not be reopened* after the local board has mailed to such registrant an Order to Report for Induction (SSS Form No. 252) or an Order to Report for Civilian Work and Statement of Employer (SSS Form No. 153) unless the local board first specifically finds there has been a change in the registrant's status resulting from circumstances over which the registrant had no control." (Emphasis added.)

Colonel Collins, the State Director of the South Carolina Selective Service System, authorized the Board to postpone defendant's induction for a period of thirty days at a time until he was able to report, although no authority to reopen the file was granted pursuant to Section 1625.2(b).[4]

By his letter dated October 28, 1968, defendant notified the Board that he had undergone an operation to his right knee on October 14, 1968 and would subsequently submit a medical report. On November 7, 1968 he submitted to the Board a medical statement accompanied by his letter in which he requested an appointment with the Board's Medical Advisor. He contended that his knee operation had changed his physical status, as the operation occurred after his pre-induction physical; and that such information had not been presented to or considered and evaluated by either the Board or the Armed Forces Examining and Entrance Station. He also stated "In lieu of my induction date set for November 28th I would like to refer you to AR–40–501, 2–10, which lists the present condition of my knee as cause for rejection."

By its letter dated November 13, 1968 the Board informed defendant that his surgeon had advised that he would be completely recovered in approximately three months, that the Board would request permission to further postpone his induction order until the end of that period, and that the medical statements would be available at the induction station at the time he reported, and that a medical interview would not be in accordance with Selective Service Regulations.

On November 26, 1968 the Board further postponed defendant's induction to December 28, 1968; and thereafter, on January 10, 1969, a further postponement was made until February 1, 1969. By its letter dated January 15, 1969, the Board directed defendant to report for induction on February 3, 1969. On that date he reported for induction as ordered but refused to submit to induction.

Mrs. Betty B. Clegg has been an employee of Local Board No. 40 for eight years. On January 1, 1967 she was promoted to Executive Secretary, whose duties included keeping minutes for the local board meetings. She was charged with keeping of the Board's records, was duly authorized to sign official documents of the Board by a vote of the Board members as required by 32 C.F.R. 1604.59.[5] The minutes of the Board meetings held on January 17, 1967 and September 17, 1968 duly authorized her to execute documents on behalf of the Board. Acting under such authority she executed many of the official documents in defendant's Selective Service file.

## DISCUSSION AND CONCLUSION

Defendant's primary defense which the court considers the key issue to determine in passing upon the guilt or the innocence of the defendant to the charges against him rests upon his contention that the Board's denial of his conscientious objection classification, and its classification of him as I–A was without basis in fact, arbitrary and contrary to law, and that its order directing him to report for induction into the armed services was therefore invalid; and thus that he cannot be convicted for his failure to be inducted.

 Congress has imposed upon the courts a statutory duty to review on a strict and limited basis the orders of

4. Note 3, *supra.*

5. 32 C.F.R. § 1604.59 states:
 "Official papers issued by a Local Board may be signed by any compensated employee of the Local Board if he is authorized to do so by Resolution duly adopted by and entered in the Minutes of the Meetings of the Local Board: Provided, that the Chairman or a member of the Local Board must sign a particular paper when specifically required to do so by the Director of Selective Service."

local selective service boards.[6] Such review is confined to the question as to whether there is a basis in fact for the classification assigned to a registrant. This court under the controlling decisions is not authorized to review the correctness of a selective service board's action if there is any evidence or basis in fact to support it. As the United States Supreme Court held in Estep v. United States, 327 U.S. 114, 66 S.Ct. 423, 90 L. Ed. 567, (1946):

> "The provision making the decisions of the local boards 'final' means to us that Congress chose not to give administrative action under this Act the customary scope of judicial review which obtains under other statutes. It means that the courts are not to weigh the evidence to determine whether the classification made by the local boards was justified. The decisions of the local boards made in conformity with the regulations are final even though they may be erroneous. The question of jurisdiction of the local board is reached only if there is no basis in fact for the classification which it gave the registrant." At 122–123, 66 S.Ct. at 427.

United States v. Young, 406 F.2d 528 (4 Cir. 1969); United States v. Tongue, 407 F.2d 774 (4 Cir. 1969); Campbell v. United States, 221 F.2d 454 (4 Cir. 1955); United States v. Broyles, 423 F. 2d 1299 (4 Cir. 1970); United States v. Seeger, 380 U.S. 163, 85 S.Ct. 850, 13 L. Ed.2d 733 (1965).

In exercising such limited review courts do not sit as "super draft boards, substituting their judgments on the weight of evidence for those of the designated agencies. Nor should they look for substantial evidence to support such determinations." Witmer v. United States, 348 U.S. 375, 381, 75 S.Ct. 392, 395, 99 L.Ed. 428 (1955). Blalock v. United States, 247 F.2d 615 (4 Cir. 1957). If the court finds that there is some proof in the record that is incompatible with the registrant's proof of exemption it should not disturb the local board's determination. Dickinson v. United States, 346 U.S. 389, 74 S.Ct. 152, 98 L.Ed. 132 (1953).

Since exemption from military service based upon conscientious objection to war is a matter of legislative grace, the burden of proof is clearly upon a registrant to establish that he is entitled to the exemption authorized by the Congress in 50 U.S.C.App., Section 456(j)[7] relieving him of his citizen's duty to be subject to combatant training in the service of the Armed Forces of the United States, and such burden is not shifted by a mere statement as to his beliefs. Dickinson v. United States, *supra*; Campbell v. United States, *supra*; Salamy v. United States, 379 F.2d 838 (10 Cir. 1967); United States v. McDonald, 301 F.Supp. 79 (N.D.Ill. 1969).

The Supreme Court of the United States and the Fourth Circuit Court of Appeals have both considered

---

6. 50 U.S.C.App. Section 460(b) (3) provides in pertinent part as follows:
 "* * * No judicial review shall be made of the classification or processing of any registrant by local boards, appeal boards, or the President, except as a defense to a criminal prosecution instituted under section 12 of this title after the registrant has responded either affirmatively or negatively to an order to report for induction, or for civilian work in the case of a registrant determined to be opposed to participation in war in any form: *Provided,* That such review shall go to the question of the jurisdiction herein reserved to local boards, appeal boards, and the President

only when there is no basis in fact for the classification assigned to such registrant. * * *"

7. 50 U.S.C.App., § 456(j):
 "Nothing contained in this title shall be construed to require any person to be subject to combatant training and service in the armed forces of the United States who, by reason of religious training and belief, is conscientiously opposed to participation in war in any form. As used in this subsection, the term 'religious training and beliefs' does not include essentially political, sociological, or philosophical views, or a merely personal moral code * * *."

and interpreted in a host of decisions too numerous to cite the conscientious objection exemption from combatant service in the Armed Forces provided for in Section 456(j), *supra*. The latest and perhaps the most definitive decision of the United States Supreme Court is that of United States v. Seeger, *supra*, decided March 8, 1965 which dealt with three cases involving the exemption claims under Section 456(j), *supra*, of conscientious objectors who did not belong to any Orthodox religious sect. In all three cases considered in *Seeger* convictions had been obtained in district courts for refusal to submit to induction in the Armed Forces. These convictions were reversed on appeal to the Courts of Appeal and to the Supreme Court. In a far reaching lucid decision which considered in depth the background, legislative history, interpretation and proper application of Section 456(j), the Supreme Court, speaking through Mr. Justice Clark, held (1) that the test of religious belief within the meaning of the exemption provided for in this section is whether it is a sincere and meaningful belief occupying in the life of its possessor a place parallel to that filled by the God of those admittedly qualified for the exemption. The court stated that such test voids imputing to Congress an intent to classify different religious beliefs, exempting some and excluding others, and is in accord with the well-established Congressional policy of equal treatment for those whose opposition to service is grounded in their religious tenets; (2) that local boards and courts are to decide whether the objectors' beliefs are sincerely held and whether they are, in his own scheme of things, religious; they are not to require proof of the religious doctrines nor are they to reject beliefs because they are not comprehensible. At 380 U.S. pages 184 and 185, 85 S.Ct. page 863 the Court stated:

"The validity of what he believes cannot be questioned. Some theologians, and indeed some examiners, might be tempted to question the existence of the registrant's 'Supreme Being' or the truth of his concepts. But these are inquiries foreclosed to Government. As Mr. Justice Douglas stated in United States v. Ballard, 322 U.S. 78, 86, 64 S.Ct. 882, 886, 88 L.Ed. 1148 (1944): 'Men may believe what they cannot prove. They may not be put to the proof of their religious doctrines or beliefs. Religious experiences which are as real as life to some may be incomprehensible to others.' Local boards and courts in this sense are not free to reject beliefs because they consider them 'incomprehensible'. Their task is to decide whether the beliefs professed by a registrant are sincerely held and whether they are, in his own scheme of things, religious.

"But we hasten to emphasize that while the 'truth' of a belief is not open to question, there remains the significant question whether it is 'truly held'. This is the threshold question of sincerity which must be resolved in every case. It is, of course, a question of fact—a prime consideration to the validity of every claim for exemption as a conscientious objector. * * *"

As the Court stated at page 173, 85 S. Ct. at page 858: "The crux of the problem lies in the phrase 'religious training and belief' which Congress has defined as 'belief in a relation to a Supreme Being involving duties superior to those arising from any human relations.'" In its assignment of meaning to such statutory language the Court stated that the inquiry in such cases may be narrowed by noting briefly those scruples expressly excepted from the definition, to wit: The exemption does not apply to "those persons who, disavowing religious belief, decide on the basis of essentially political, sociological or economic considerations that war is wrong and that they will have no part of it."

In its discussion of the statutory definition of "religious training and beliefs", at page 186, 85 S.Ct. at page 862 the Court further stated that it was construing such statutory definition

broadly "and it follows that any exception to it must be interpreted narrowly. The use by Congress of the words 'merely personal' seems to us to restrict the exception to a moral code which is not only personal but *which is the sole basis for the registrant's belief and is in no way related to a Supreme Being*." (Emphasis added).

■ It therefore clearly appears that *Seeger* stands for the proposition that for a registrant to be denied a conscientious objection classification based on "essentially political, sociological or philosophical views, or a merely personal moral code," such views or moral code must constitute the *sole basis* for the registrant's beliefs, and be in *no way* related or based upon his religious training and beliefs or to a Supreme Being.

■ Applying *Seeger's* interpretation and application of the statutory term "religious training and beliefs" to the instant case, this court must determine whether defendant in his application for conscientious objection classification (SSS Form 150) submitted to the Board on April 25, 1968 stated a "prima facie" case to come within the exemption provided by Section 456(j), *supra*.

In his claim for exemption defendant in Series I of Form No. 150 certified as follows:

"I am, by reason of my religious training and belief, conscientiously opposed to participation in war in any form and I am further conscientiously opposed to participation in non-combatant training and service in the Armed Forces. I, therefore, claim exemption from both combatant and non-combatant training and service in the Armed Forces."

In Series II of Form 150 entitled "Religious Training and Belief" in answer to Question No. 1 "Do you believe in a Supreme Being," he answered "Yes." In answer to Question No. 2 "Describe the nature of your belief which is the basis of your claim made in Series I above, and state whether or not your belief in a Supreme Being involves duties which to

you are superior to those arising from any human relation," he answered "I believe in a God of love who created the world. My belief in a Supreme Being and His laws, as *I* interpret them is such it transcends man's law." In answer to Question No. 5 "Under what circumstances, if any, do you believe in the use of force," he answered "To defend myself and family and then only in a restraining manner rather than a harmful one."

■ From the foregoing the court must conclude that defendant submitted to his local board such an assertion of "religious beliefs" in a Supreme Being involving duties which "are superior to those arising from any human relation" which, if sincerely held by him would make out a valid case for exemption under the *Seeger* mandate, since neither the Board nor this court is free to reject such beliefs because they may be considered "incomprehensible." Thus, having decided the threshold question that defendant made out a prima facie showing to entitle him to the exemption based at least in part on his "religious training and beliefs", then the court must next consider whether it has the power under the record in this case to determine whether such beliefs are "truly held" by the defendant.

The court is sorely mindful of the fact, as set forth in its findings of fact, *supra*, that the minutes of the Board meeting on May 14, 1968 when defendant's request for conscientious objection classification was considered and reviewed only reflect that he was classified I–A, and that his file was sent to the State Appeal Board. Unfortunately there is not a word in the Minutes which states or indicates the reasons or the basis for the Board's decision in denying his conscientious objection application.

The prosecution urges upon the court that neither the Local Board nor the Appeal Board was required to record their reasons for denying defendant's conscientious objection claim. It further

urges that it was not necessary for the defendant to be advised of the basis of such determination. Several Court of Appeals decisions from Circuits other than the Fourth Circuit and several district court opinions other than from this district were cited in support of such contention.

However, the Fourth Circuit in several very recent decisions, most of which have been decided since the court heard the within case, has repeatedly held that where a *prima facie* case has been established before the local board entitling a registrant to conscientious objection classification it is absolutely essential to the validity of an Order to Report for Induction that the Board state its basis of decision and the reasons therefor; that is, whether it found the registrant incredible, or insincere, or of bad faith, and why. United States v. James, 417 F.2d 826 (decided June 26, 1969); United States v. Vlasits, 422 F.2d 1267 (decided March 2, 1970); O'Brien v. Resor, Secretary of the Army, 423 F.2d 594 (decided March 18, 1970); United States v. Broyles, 423 F.2d 1299 (decided March 19, 1970). In these cases the Fourth Circuit reasoned that "[w]here the local board's conclusion [a bare order of rejection without explanation] may be explainable on alternate grounds, both legally acceptable and unacceptable, the risk is too great that we would place an imprimatur on an unsupportable basis of decision."

In *Broyles, supra*, the Fourth Circuit quoted extensively from the Ninth Circuit decision of United States v. Haughton, 413 F.2d 736 (1969) as follows:

" 'Inconsistent statements or actions or a finding of insincerity may support the denial of conscientious objector status. Parrott v. United States, *supra* [9 Cir., 370 F.2d 388]; see Witmer v. United States, [348 U.S.] at 382, 75 S.Ct. 392. The local board, however, must state the reasons for the denial of a requested classification when a registrant has 'met the statutory criteria' (*Parrott, supra*, [370 F.2d] at 388)· for classification or, in

the language of *Dickinson*, has placed himself 'prima facie within the statutory exemption.' 346 U.S. at 397, 74 S.Ct. at 158. Kessler v. United States, 406 F.2d 151, 156 (5 Cir. 1969). Otherwise a court cannot determine whether a board's denial of a requested classification was based on a belief that the registrant's statements, even if true, did not entitle him to the classification, or on the reasonable disbelief of certain allegations necessary to the registrant's prima facie case. United States v. Jakobson, 325 F.2d 409, 416–417 (2 Cir. 1963), *aff'd sub nom* United States v. Seeger, 380 U.S. 163, 85 S.Ct. 850, 13 L.Ed.2d 733 (1965); Shepherd v. United States, 217 F.2d 942 (9th Cir. 1954), Batelaan v. United States, 217 F.2d 946 and note 1 (9th Cir. 1954); United States v. St. Clair, *supra* [D. C., 293 F.Supp. 337], at 344, Cf. Schuman v. United States, 208 F.2d 801, 805 (9th Cir. 1953).

\* \* \* \* \* \*

" 'The local board may have concluded that Haughton was insincere in his claim, or that Haughton's religious training and beliefs did not, by themselves, lead to his opposition to war. The board may have relied on information not in the record, contradicting the allegations in Haughton's form 150. Or the board may have erroneously concluded that Haughton's allegations, even if true, did not entitle him to his requested classification. Since the board has not stated the basis for its decision, we cannot determine whether Haughton was properly denied conscientious objector status. United States v. Jakobson, *supra*, *aff'd sub nom* United States v. Seeger, *supra*.' Id., at 742–743."

The Fourth Circuit then stated:

"For the reasons advanced by the Ninth Circuit, we are persuaded that the rule in *James* should extend to cases where the basis of rejection of a claim of conscientious objection may be other than solely the registrant's credibility. *In any case where the*

*board fails to disclose the basis for its decision, we risk blind endorsement of a mistake of law.* Where it is clear that a *prima facie* case was established, we conclude that in conscientious objector cases, it is essential to the validity of an order to report that the board state its basis of decision and the reasons therefor, i. e., whether it has found the registrant incredible, or insincere, or of bad faith, and why." (Emphasis added.)

Regardless of the fact that this court may have serious doubts about the sincerity of defendant's "religious beliefs" as set forth in his request for conscientious objection classification, based upon the facts disclosed by his voluminous file and record before the Board, under the command of the foregoing recent Fourth Circuit decisions it is concluded that this court is powerless to determine that there was a more than adequate factual basis in the defendant's record before the Board to deny defendant's requested classification as a conscientious objector. It is noted that more than seven years elapsed from the date defendant first registered with the Board and filed his completed initial classification questionnaire on November 25, 1960 in which he stated that the question of his being a conscientious objector "doesn't apply", to the date he first claimed to be a conscientious objector in April 1968.

A review of his selective service file reveals that he was deferred from time to time in order to allow him to complete his college education. In 1965 two orders to report for induction were cancelled; in 1965 he appealed his classification to the State and National Selective Service Headquarters and was granted a Presidential Appeal; in 1966 the Presidential Appeal Board granted him a six month deferment to permit him to be employed with the South Carolina Council on Human Relations; in 1966 he was also granted a deferment so that he could serve in the Peace Corps; in 1968 when he reported that he was unemployed the Board classified him I–A and he thereupon appealed this classifi-

cation for medical reasons; in April 1968 he filed for a conscientious objection status; after that in June 1968 he attempted to obtain another deferment to work for an organization known as Volunteers In Service To America; in July 1968 additional Presidential Appeal was granted to the defendant; in August 1968 the Board's latest order to report for induction directed to him was cancelled; and in September 1968 the defendant attempted to have his classification reopened for medical reasons and thereby acquire new appeal rights.

At trial, defendant testified that he was a draft counselor with the Columbia Draft Information Center. His selective service file leaves the very strong inference that he was quite knowledgeable in Selective Service laws and procedures, and that he took every conceivable step to evade military service, and that finally after he had exhausted all other effective delaying and avoiding procedures, he filed his claim for conscientious objector classification and exemption.

In his brief filed with the court after the trial defendant asserts numerous defenses upon which he proclaims his innocence to the charges against him, many of which are based upon alleged errors or irregularities quite technical in nature, such as the fact that the Board's Executive Secretary had signed some of its orders without proper authorization. In others he asserts that he was denied due process in several particulars. Nevertheless, except for the conscientious objector aspect of his defense, the court has concluded after careful consideration that all other bases are without merit, and do not constitute any valid defense to this prosecution.

Moreover, if this court thought that it had the authority to do so under the applicable law and decisions, it would have no hesitancy in determining that there was more than an ample basis in fact for the Board's rejection of defendant's request for a conscientious objector exemption, its classification of him as I–A, and that the Board's order to report for induction which he admittedly failed and

598

refused to obey was valid and proper; and that consequently the defendant was guilty beyond all reasonable doubt of a wilful and intentional violation of Title 50 U.S.C.App. Section 462 as charged in the Indictment.

However, this court has an absolute duty to follow the teachings of the Fourth Circuit Court of Appeals under *stare decisis*. Therefore, since it has concluded that the defendant made out a *prima facie* claim for conscientious objector status before the Board, and the Board failed to record its basis of decision and the reasons therefor in its minutes, (even though it is reasonably inferable that it was based upon its determination of defendant's insincerity and the lateness of his filing for conscientious objector status), this court must hold that the defendant is not guilty of violating Section 462, *supra*, under the record in this case.

And it is so ordered.