Vivian M. HITT, Plaintiff,

v.

Luther COX, individually and as Sheriff of Fauquier County, Va.; George West, individually and as Deputy Sheriff/Chief Jailer of Fauquier County, Va.; Terrell Don Hutto, individually and as Director of the Virginia Department of Corrections and Virginia Department of Corrections, Defendants,

and

The BOARD OF SUPERVISORS OF FAUQUIER COUNTY, VA., Appellee,

v.

HARLEYSVILLE MUTUAL INSURANCE COMPANY, Appellant.

Vivian M. HITT, Plaintiff,

v.

Luther COX, individually and as Sheriff of Fauquier County, Va.; George West, individually and as Deputy Sheriff/Chief Jailer of Fauquier County, Va.; Terrell Don Hutto, individually and as Director of the Virginia Department of Corrections and Virginia Department of Corrections, Defendants,

and

The BOARD OF SUPERVISORS OF FAUQUIER COUNTY, VA., Appellant,

v.

HARLEYSVILLE MUTUAL INSURANCE COMPANY, Appellee.

Nos. 83–1225, 83–1230.

United States Court of Appeals, Fourth Circuit.

Argued Feb. 7, 1984.

Decided June 21, 1984.

David P. Durbin, Washington, D.C. (John O. Easton, Carr, Jordan, Coyne & Savits, Washington, D.C., Carl Anthony Maio, Harleysville, Pa., on brief), for appellant/cross-appellee.

James P. Downey, County Atty., Warrenton, Va., for Fauquier County (J. Sloan Kuykendall, Kuykendall, Wetsel & Kuykendall, P.C., Winchester, Va., on brief), for appellee/cross-appellant.

Before ERVIN and CHAPMAN, Circuit Judges, and PECK *, Senior Circuit Judge.

ERVIN, Circuit Judge:

Fauquier County sought indemnification from the Harleysville Mutual Insurance Company for attorney's fees and a $500,000 settlement it incurred as a result of a suit brought by a former inmate severely burned in a county jail fire. Harleysville had refused to defend the County in the original suit and denied liability in the subsequent action for indemnification. The district court denied Harleysville's motion for summary judgment and after trial, awarded the County indemnification for $350,000 of the settlement as well as attorney's fees, expenses and costs. Harleysville appeals from the denial of its motion for summary judgment and from the final judgment. Fauquier County cross appeals on the issue of damages. We affirm.

I.

In 1975 Harleysville became the general liability insurance carrier for the Fauquier County Board of Supervisors (the Board). The Board's general liability policy provided "premises-operations" coverage on various county buildings including the county jail. The policy provided the Board with $500,000 of coverage for each bodily injury

---

* Honorable John W. Peck, Senior Circuit Judge of the Sixth Circuit, sitting by designation.

for which the Board may be liable as a result of an unexpected or unforeseen accident. The Board renewed this policy on June 16, 1979, and extended coverage until June 16, 1980.

In late 1979, a Harleysville underwriter contacted Richard Bowen, whose company, Carr and Hyde, Inc., had arranged Harleysville's insurance coverage of the Board. The underwriter asked Bowen to check whether the Board had double coverage for the county jail. Bowen discovered that the Board had police professional liability coverage through a policy issued by the Ideal Mutual Insurance Company. Bowen then telephoned the County Finance Director, Larry D. Czarda, and told him that "he may have found a way to save the county some money" by eliminating the apparent duplicate coverage. Soon after this conversation, Bowen sent a copy of the Ideal policy to Harleysville underwriter Mike Cash and indicated that he thought the Ideal policy duplicated the jail coverage under Harleysville's policy. Agreeing that the Ideal policy duplicated Harleysville's coverage of the jail, Curtis Klause, another underwriter, approved on February 21, 1980 deletion of the county jail from the Harleysville policy. Klause indicated on cross-examination that Harleysville did not intend to leave the Board without insurance coverage of the jail.

Harleysville formalized the deletion by sending a retroactive endorsement dated March 17, 1980 to Czarda. The endorsement deleted coverage of the jail from June 16, 1979, to June 16, 1980. The district court specifically found that Czarda did not object to the deletion because Bowen had assured him "that the Ideal policy contained the same coverage for the jail as the Harleysville policy." (J.A. 21) The district court also found that the Board had reasonably relied on Bowen to determine whether there was double coverage.

Two weeks before Klause approved deletion of the county jail from the Harleysville policy, the incidents giving rise to this case occurred. In the early morning hours of February 3, 1980, Vivian Hitt was jailed for drunk driving. After she was left unattended with a package of cigarettes and matches, the mattress on the bed in her cell caught fire, and she was severely burned. Hitt incurred medical bills in excess of $200,000, and in February 1982 brought suit against the Board, the Sheriff, and the Deputy Sheriff under 42 U.S.C. § 1983 and Virginia tort law.

Before filing a claim with Ideal, the county attorney examined the policy and discovered that the Ideal policy did not cover the jail. After filing an answer and making further investigation of the circumstances surrounding the deletion of jail coverage from the Harleysville policy, the county attorney wrote to Harleysville on May 13, 1982, and demanded that Harleysville defend the Board in the Hitt action and pay any judgment or settlement resulting from the suit. Although the Harleysville policy required that written notice of any potential claim be given "as soon as practicable," the district court found that it was the practice of Harleysville not to require written notice, and that within one week of the fire, Czarda had informed Bowen of the incident. After receiving the written demand to defend, Harleysville formally denied responsibility for coverage.

In response to Hitt's complaint, the Board moved for summary judgment and raised the defenses of good faith and official immunity. The district court denied the Board's motion but granted Hitt's motion to strike the Board's defenses. Following these rulings, the Board, on July 5, 1982, settled with Hitt. The terms of the settlement were highly irregular. The Board agreed to pay Hitt $350,000 in cash on July 15 and agreed to assign an additional $150,000 to Hitt if it succeeded in an action for indemnification against Harleysville. The Board agreed to seek recovery of $500,000 (the limit for personal injury liability in its insurance policy) from Harleysville. However, the Board also agreed to pay the additional amount to Hitt even if it only recovered $350,000 from the insurance company.

The district court concluded that Harleysville was estopped from denying coverage in this case. It found the $350,000 settlement reasonable, but refused to award the additional $150,000 because the Board had only paid $350,000.

## II.

■ Harleysville argues that the retroactive cancellation of coverage relieves it of any liability in this case.[1] The district court concluded that Harleysville was estopped from asserting the validity of the retroactive cancellation. We agree with Harleysville that the doctrine of estoppel does not apply. In Virginia[2], estoppel requires that:

(1) There must have been a false representation or concealment of material facts; (2) the representation must have been made with knowledge of the facts; (3) the party to whom it was made must have been ignorant of the truth of the matter; (4) it must have been made with the intention that the other party should act upon it; and (5) the other party must have been induced to act upon it.

*Trayer v. Bristol Parking Inc.*, 198 Va. 595, 604–05, 95 S.E.2d 224, 231 (1956) (quoting *Taylor v. Cussen*, 90 Va. 40, 43, 17 S.E. 721 (1893)). Although Harleysville through Bowen made a false representation of fact which induced the reliance of an unknow-

ing Board, no evidence indicated that it made its representation with knowledge of the true facts. Indeed, the district court specifically found that the parties did not intend to leave the Board without coverage for the jail.

■ Nonetheless, we conclude the retroactive cancellation is voidable under the doctrine of mutual mistake.[3] It is well established that "a mutual mistake as to the existence of facts which go to the essence of a contract will render a contract voidable where it later appears that such facts did not exist." *United States v. Garland*, 122 F.2d 118, 121 (4th Cir.), *cert. denied*, 314 U.S. 685, 62 S.Ct. 189, 86 L.Ed. 548 (1941). *Accord Virginia Iron Coal & Coke Co. v. Graham*, 124 Va. 692, 98 S.E. 659 (1919). In this case, both parties assumed that the jail was covered under the Ideal policy, and the assumed existence of this fact led to the retroactive cancellation contract.

Harleysville contends that a mistake cannot be attributed to it because Bowen was not its agent. The district court found to the contrary, and its finding is supported by the evidence. Carr and Hyde, Inc., for which Bowen worked and which he partly owned, solicited insurance for Harleysville. Under Va.Code § 38.1–327.2, this solicitation conclusively establishes agency. The question of agency aside, Curtis Klause, a

---

**1.** Harleysville additionally argues that even if its policy were in effect, the Law Enforcement Exclusion Endorsement excludes coverage in this case. This argument is completely without merit. The endorsement provides:

It is agreed that this policy or any endorsement attached hereto shall not apply to any bodily injury liability, personal injury liability, property damage liability, or penalties, fines, punitive or exemplary damages because of any act or omission of the insured's law enforcement agency or of any other person for whose acts or omissions the Insured is legally responsible; *and* arising out of the discharge of duties of a law enforcement officer or official.

(J.A. 250) (emphasis added). This endorsement excludes liability for acts or omissions of "others" for whom the insured is responsible as long as those acts or omissions arise out of the discharge of law enforcement duties. The Board, however, was sued for its *own* omissions (e.g.

failure to provide funding for proper jail supervision). Thus, the exclusion clearly does not apply.

**2.** The parties appeared before the district court on diversity jurisdiction, and the acts giving rise to this suit occurred in Virginia; therefore, we apply Virginia law. *See Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

**3.** Because we hold that the retroactive cancellation was voidable, we do not address the question of whether a retroactive cancellation may ever relieve an insurance company from liability which it has already incurred. We note, however, that there is considerable question whether such a cancellation may be effective. *See Bassett v. Federal Kemper Ins. Co.*, 565 S.W.2d 823 (Mo.App.1978). Ms. Hitt was injured on February 3, 1980, and the retroactive cancellation was dated March 17, 1980.

Harleysville underwriter and the man who approved the deletion of jail coverage, established mistake of fact on Harleysville's part. Klause testified that in deleting the Harleysville policy, the company did not intend to take away from the Board's total coverage.

As an alternative defense, Harleysville notes that a party seeking relief under the mutual mistake doctrine must have exercised reasonable diligence, *Solenberger v. Strickler*, 110 Va. 273, 65 S.E. 566 (1909), and argues that the Board's reliance on Bowen was unreasonable. The district court, however, concluded that it was reasonable for the Board to "place themselves in the hands of the man who handled their insurance for Harleysville [and] who was knowledgeable in that area where they were not." (J.A. 240) We believe this ruling was correct. When an insurance company, through its agent, undertakes to advise an insured on the scope of the insured's coverage, it is reasonable *per se* for the insured to rely on the company's representations. A company which purports to be expert in insurance matters and which purports to represent its client's interest cannot avoid the responsibilities it has thus incurred by arguing in hindsight that an insured cannot believe an insurance agent. *Cf. Farmers' & Mechanics' Benevolent Fire Insurance Ass'n v. Williams*, 95 Va. 248, 28 S.E. 214 (1897) (insured entitled to rely on representation of agent that fire policy covered insured premises if a night watchman was employed near the premises).

### III.

Harleysville also contends that even if the retroactive cancellation were not effective, the Board waived coverage by failing to comply with the express notice provisions of the general liability policy. The Harleysville insurance policy required that written notice of any "occurrence" be "given as soon as practicable." Hitt was injured February 3, 1980. The Board did not give its first written notice until May 13, 1982.

We agree with the district court that two independent grounds excuse the Board's failure to give prompt written notice of the Hitt accident. First, the district court found on the basis of sufficient evidence that Harleysville frequently permitted notice to be given orally. In this case oral notice was promptly given to Bowen over the phone. By customarily relying on oral notice, Harleysville waived the written notice provision. *See Woodmen of World Life Insurance Soc. v. Grant*, 185 Va. 288, 38 S.E.2d 450 (1946) (holder of contractual rights may waive them by conduct). Second, it would have been futile for the Board to contact Harleysville because the company was in the process of cancelling coverage. Although Harleysville did not officially cancel coverage until March 17, 1980, Bowen led the Board to believe that it was covered under the Ideal policy. The Board was therefore justified in assuming that it would be unnecessary to contact Harleysville about the fire. *See Andrews v. Cahoon*, 196 Va. 790, 86 S.E.2d 173 (1955) (failure to forward summons to insurer within reasonable time as required by policy excused where insurer has denied liability).

### IV.

Harleysville also challenges the $350,000 settlement as unreasonable. *See Employers Mutual Liability Insurance Co. of Wisconsin v. Hendrix*, 199 F.2d 53, 60 (4th Cir.1952) ("in every case of settlement before judgment the reasonableness of the compromise is a proper subject of inquiry" in a subsequent action by the insured against the insurer). It argues that the Board could not possibly have been found liable under 42 U.S.C. § 1983. We do not share Harleysville's conviction. Official policy for purposes of determining § 1983 liability may be established by the omissions of supervisory officials. *Avery v. County of Burke*, 660 F.2d 111, 114 (4th Cir.1981). The County was responsible for providing the jail. Va.Code § 15.1–257. The County had been informed about the inadequacies of matron service (inspection

of female cells) and had been asked for supplemental funding to extend that service. It had also been notified of the risk of fire in jail cells in connection with requests for audio monitoring and smoke detectors. It apparently turned down these special funding requests. Most significantly from the Board's perspective, the district court had denied the motion for summary judgment and struck the Board's defenses of good faith and official immunity. Given these adverse legal rulings and considering the severe injuries sustained by Ms. Hitt (she was permanently disfigured), it was reasonable for Harleysville to offer Hitt a $350,000 settlement, especially in view of the fact that her medical bills alone exceeded $200,000.

## V.

The Board cross appeals from the district court's denial of its claim for indemnification of the conditional portion of the settlement. The Board became liable to pay Hitt an additional $150,000 when it succeeded in obtaining a $350,000 judgment against Harleysville. Harleysville points out that many courts have refused to award indemnification for conditional settlements because the settlement was not a sum that the insured was legally obligated to pay. For example, in *Huffman v. Peerless Insurance Co.*, 17 N.C.App. 292, 193 S.E.2d 773, *cert. denied*, 283 N.C. 257, 195 S.E.2d 689 (1973), the insured entered into a consent judgment on the condition that the judgment be collected from his insurance company without recourse to his personal assets. As in the Harleysville insurance policy, Peerless agreed to indemnify the insured only for amounts that the insured was legally obligated to pay. The North Carolina Court of Appeals concluded that because the insured was not legally obligated to pay damages to the plaintiff, Peerless was not liable under its insurance policy. *See also American Casualty Co. v. Griffith*, 107 Ga.App. 224, 129 S.E.2d 549

(1963); *Stubblefield v. St. Paul Fire & Marine Ins. Co.*, 267 Or. 397, 517 P.2d 262 (1973).[4] In all the cases cited by Harleysville, however, the insured was not legally responsible for paying the conditional settlement. In contrast, the Board has become personally obligated to pay the $150,000. This fact distinguishes the cases cited by Harleysville from this case.

■ We, nevertheless, conclude that Harleysville is not liable to indemnify for the conditional settlement because we find the settlement patently unreasonable. When the Board settled with Hitt, it held a $500,000 personal injury liability policy with Harleysville that it reasonably suspected might be still in effect. Once it agreed to settle by paying Hitt $350,000, it had no incentive to avoid an agreement to pay an additional $150,000 *if* Harleysville was found liable to indemnify. In this situation, the negotiating parties no longer have adverse interests, and their conditional settlement is presumptively unreasonable. The fact that the Board agreed to pay the additional $150,000 even if Harleysville was only found liable for the original $350,000 does not establish arm's length bargaining. Rather, it reveals an attempt to do indirectly what the line of cases cited by Harleysville would prevent doing directly—that is, recover amounts that the insured does not expect to pay out of its own resources. To allow the Board full recovery in this case would set a precedent allowing any insured left to defend himself not only to settle at a reasonable amount, but to give away an additional amount up to the liability limit of the policy conditional on a successful indemnity suit against the insurance company. We decline to reach such an unfair result.

## VI.

For the foregoing reasons, the district court's decision is affirmed in all respects.

AFFIRMED.

4. *But see Coblentz v. American Surety Company of New York*, 416 F.2d 1059 (5th Cir.1969) (insurance company which unjustifiably refused to defend action against insured cannot challenge settlement unless it is tainted by fraud or collu-

sion). *Coblentz*, however, is not controlling in Virginia and appears to be contrary to the law of this circuit. *Cf. Employers Mutual Liability Ins. Co. of Wisconsin v. Hendrix*, 199 F.2d 53, 60 (4th Cir.1952).