ST. PAUL TRAVELERS as Successor in Interest to Aetna Life and Casualty, Plaintiff,

v.

Johnny A. PAYNE d/b/a Sea Coast Construction, George B. Pocisk and Ann M. Pocisk, Defendants.

No. 9:05–1701–PMD.

United States District Court, D. South Carolina, Beaufort Division.

April 17, 2006.

Franklin J. Smith, Jr., Richardson Plowden Carpenter and Robinson, Columbia, SC, for Plaintiff.

Drew Alan Laughlin, Laughlin and Bowen, Hilton Head Island, SC, Edwin Russell Jeter, Jeter and Williams, Columbia, SC, for Defendants.

## ORDER

DUFFY, District Judge.

This matter is before the court on Plaintiff St. Paul Travelers's ("Plaintiff" or "St. Paul") Motion for Summary Judgment. Defendants ask that summary judgment be denied or that the court certify the controlling questions of law in that motion to the Supreme Court of South Carolina.

## BACKGROUND

St. Paul provided certain commercial general liability ("CGL") insurance coverage for Defendant Johnny A. Payne ("Payne") during the period of May 12, 1989, through May 12, 1995. From 1994 to 1995, Payne worked as a framing contractor in the construction of a home on Fripp Island in Beaufort County.

In 2002, the Pocisks, subsequent purchasers of the Fripp Island home, filed a lawsuit against Payne and others in the Beaufort County Court of Common Pleas, alleging that the home had been defectively constructed. *Pocisk v. Sea Coast Construction Corporation of Beaufort, et al,* C/A No.: 02–CP–07–360 ("the underlying suit"). St. Paul, asserting that the Pocisks claim did not constitute an "occurrence" as meant by the policy, denied coverage for the claim, but provided a defense to Defendant Payne in the underlying suit, pursuant to a full reservation of rights.

Shortly before trial, Payne and the Pocisks settled the underlying suit. The settlement was confirmed by letter dated May 6, 2005, and signed by the attorneys and both parties. Payne subsequently signed a Consent Confession of Judgment for $250,000 and a Settlement Agreement. The Settlement Agreement provides that Payne assigns all rights under the subject CGL policies to the Pocisks, Payne will cooperate with the Pocisks in pursuing the insurance coverage from St. Paul, and the Pocisks agree not to seek payment of the judgment from Payne.[1]

In June 2005, St. Paul filed this action requesting a declaration from the court that it is under no duty or obligation to defend or indemnify Johnny A. Payne d/b/a Sea Coast Construction for any matters related to the underlying lawsuit or any settlement or judgment arising therefrom. Plaintiff brings this action pursuant to the Uniform Declaratory Judgment Act, S.C.Code Ann. § 15–53–10 et seq.[2] St. Paul now moves for summary judgment regarding this issue.

## STANDARD OF REVIEW

To grant a motion for summary judgment, the court must find that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The judge is not to weigh the evidence but rather to determine if there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). All evidence should be viewed in the light

---

1. The Settlement Agreement states, "3. The Plaintiffs, George B. and Ann M. Pocisk, agree to not seek satisfaction of the judgment from Sea Coast Corporation of Beaufort and Johnny A. Payne, Individually and d/b/a Sea Coast Construction or any entity in which Johnny Payne has been involved or had an interest, excepting the insurers for those entities or him personally, including those entities named above." (Settlement Agreement, at 5.)

2. "Courts of record within their respective jurisdictions shall have power to declare rights, status and other legal relations whether or not further relief is or could be claimed. No action or proceeding shall be open to objection on the ground that a declaratory judgment or decree is prayed for. The declaration may be either affirmative or negative in form and effect. Such declarations shall have the force and effect of a final judgment or decree." SC Code Ann. § 15–53–20

most favorable to the non-moving party. *See Perini Corp. v. Perini Constr., Inc.,* 915 F.2d 121, 123–24 (4th Cir.1990). "[W]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate." *Teamsters Joint Council No. 83 v. Centra, Inc.,* 947 F.2d 115, 119 (4th Cir.1991).

Summary judgment is not "a disfavored procedural shortcut," but an important mechanism for weeding out "claims and defenses [that] have no factual bases." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

### ANALYSIS

■ St. Paul argues that the Settlement Agreement is presumptively unreasonable and therefore invalid. Accordingly, St. Paul asserts that it is not obliged under the CGL Policies to indemnify Payne for his Confession of Judgment entered pursuant to the Settlement Agreement.

### A. Validity of the Settlement Agreement

■ The South Carolina Supreme Court has recognized "that litigants are free to devise a settlement agreement in any manner that does not contravene public policy or the law." *Poston by Poston v. Barnes,* 294 S.C. 261, 264, 363 S.E.2d 888, 890 (S.C.1987). In fact, South Carolina courts encourage such compromise agreements because they avoid costly litigation and delay to an injured party. *Id.* However, courts must carefully scrutinize these settlement agreements in order to determine their efficiency and impact upon the integrity of the judicial process. *Id.*

The Fourth Circuit, applying South Carolina law, has held that a settlement agreement between an insured and an injured party in which the insurer remains liable while the insured is insulated from any personal liability is presumptively unreasonable and therefore invalid. In *Hitt v. Cox,* 737 F.2d 421 (4th Cir.1984), the insured and the injured parties entered a conditional settlement whereby the insured party agreed to pay the injured party an additional $150,000 in damages if the liability carrier was held obligated to indemnify the insured. Applying Virginia law, the Fourth Circuit held that such a conditional settlement was unreasonable and therefore invalid because "the negotiating parties no longer ha[d] adverse interests and their settlement is presumptively unreasonable." *Id.* at 426. The rationale for the holding in *Hitt* was that an insured should not be allowed to seek indemnity from a liability carrier for *"amounts that the insured does not expect to pay out of its own resources."* *Id.* (emphasis added). To allow full recovery against the liability carrier "would set a precedent allowing any insured left to defend himself not only to settle at a reasonable amount, but to give away an additional amount up to the liability limit of the policy conditional on a successful indemnity suit against the insurance company." *Id.* In the more recent case of *Stonehenge Engineering Corp. v. Employers Ins. of Wausau,* 201 F.3d 296 (4th Cir.2000), the Fourth Circuit, interpreting South Carolina law held that,

all of the evidence points to the conclusion that Stonehenge Engineering Corporation and National Stonehenge Corporation never intended to pay the Owners Association any excess of their respective confessions of judgment not covered by Wausau. With respect to National Stonehenge, under express terms of the Settlement Agreement, completely overlooked by the dissent, the Owners Association agreed not to file or execute upon the confession of judgment signed by National Stonehenge Corporation. Clearly, in this circumstance, National Stonehenge Corporation did not expect to pay any amount of the balance due on its confession of

judgment out of its own resources in direct contravention of our holding in *Hitt*.

The *Stonehenge* Court reached this conclusion "despite the district court's finding that the Settlement Agreement between the Owners Association and Stonehenge was not the product of fraud or collusion." The Court found that *Hitt* does not "require the presence of fraud or collusion between the insured and the injured party in order to prevent full indemnification on a conditional settlement when the insured never expected to pay the conditional amount out of its own resources." *Id.*

The Settlement Agreement in this case is remarkably similar to the settlement agreement found to be invalid by the court in *Stonehenge*. In both agreements, after the insured confesses a judgment for a specified amount, he is promised, through the same document, that satisfaction of the judgment will not be sought against him.

In this instance, as was the case for the insured in *Stonehenge*, Payne did not expect to pay any amount due on his confession of judgment out of his own pocket, in direct contravention of the Fourth Circuit's holding in *Hitt* and *Stonehenge*. Therefore, under these precedents, the court finds that the Settlement Agreement is, as a matter of law, presumptively unreasonable and therefore invalid.[3]

Because the Settlement Agreement is invalid, St. Paul is not obliged to indemnify Payne for the $250,000 confession of judgment entered pursuant to the Settlement Agreement. The court does not rule upon whether St. Paul correctly denied coverage under the CGL Policies. The court only finds that St. Paul is not required to indemnify Payne for a judgment entered pursuant to an illegitimate settlement. Accordingly, the court finds that Plaintiff's motion for summary judgment should be granted.[4]

**3.** Contrary to Defendants' assertions, the fact that the $250,000 settlement amount may have been a fair and equitable amount is completely irrelevant to the question before the court, i.e., whether St. Paul is liable to indemnify Payne under the CGL policy. In other words, the fact that $250,000 settlement is fair has no bearing on whether Payne intended to pay out of his own resources, or the resources of his business, the confession of judgment.

**4.** Plaintiff also argues that, even if the Settlement Agreement is valid, the CGL Policies do not require St. Paul to indemnify Payne for the judgment. The relevant CGL policy language provides that St. Paul "will pay those sums *that the insured becomes legally obligated to pay* as damages because of 'bodily injury' or 'property damage' to which this insurance applies." Because, under the Settlement Agreement, the Pocisks agree not to seek satisfaction of the $250,000 judgment against Payne or his business, St Paul argues that Payne is not "legally obligated" to pay any amount to the Pocisks. As such, St Paul claims that it is not required by the CGL Policies to pay any amount to the Pocisks.

South Carolina courts have not specifically ruled upon whether a covenant not to execute a judgment against the insured removes the insured's legal obligation to pay the judgment such that the insurer is discharged from its obligations under the CGL policies. In the absence of state court authority a federal court must apply the law as it appears the South Carolina Supreme Court would rule. *Erie Railroad v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188; *Brendle v. General Tire & Rubber Co.*, 505 F.2d 243, 245 (4th Cir.1974). However, it is the normal policy of the court to avoid unnecessarily predicting how the South Carolina Supreme Court would rule on an unsettled issue of state law when there are other dispositive issues. *Creech v. N.D.T. Industries, Inc.*, 815 F.Supp. 165, 168 (D.S.C.1993); *see Cianbro Corp. v. Jeffcoat & Martin*, 804 F.Supp. 784, 790 n. 8 (D.S.C.1992). Therefore, the court declines to hypothesize upon how the South Carolina Supreme Court would interpret the relevant policy language; rather, the court relies entirely upon the invalidity of the Settlement Agreement in granting Plaintiff's motion for summary judgment.

## B. Certification of Issue to South Carolina Supreme Court

■ Defendant suggests that, because the South Carolina courts have not explicitly ruled upon whether agreements like this Settlement Agreement are presumptive unreasonable, the court should certify the issue to the South Carolina Supreme Court. Under South Carolina Appellate Court Rules, Rule 228, "The Supreme Court in its discretion may answer questions of law certified to it by any federal court of the United States or the highest appellate court or an intermediate appellate court of any other state, when requested by the certifying court if there are involved in any proceeding before that court questions of law of this state which may be determinative of the cause then pending in the certifying court when it appears to the certifying court there is no controlling precedent in the decisions of the Supreme Court."

■ The court finds, however, that the possibility of certification does not change its analysis. Questions ought not to be certified to a state court if the answer is reasonably clear. *City of Houston, Tex. v. Hill,* 482 U.S. 451, 107 S.Ct. 2502, 96 L.Ed.2d 398 (1987). While the South Carolina court has not ruled directly on the relevant issue, it has recognized that one who is released from liability has no incentive to negotiate terms that are favorable for another party who may potentially be affected by the settlement agreement. In *Broome v. Watts,* 319 S.C. 337, 461 S.E.2d 46 (1995), the Court wrote,

> As a practical matter, once Watts [the named defendant] was released as a defendant, she no longer had a genuine stake in the outcome as did USAA [Watt's UIM carrier]. Because the Broomes had agreed not to execute any judgment obtained against her, Watts risked little by agreeing to any terms the Broomes chose to insert. (In addi-

tion to the jury trial waiver, Watts also purportedly waived venue in her home county of Lexington.)

*Id.* at 341, n. 2, 461 S.E.2d 46.

Accordingly, the South Carolina Supreme Court held that USAA's right to a jury trial was not abrogated by the settlement agreement by which Watts purported to waive that right. This case illustrates that the Supreme Court would recognize the inequities inherent in binding an insurer to indemnify the insured, where the insured settled the claim following a complete release from liability. Considering both the language of *Broome* and South Carolina Supreme Court's clear policy of closely scrutinizing settlement agreements for unscrupulous outcomes, this court can, with reasonable certainty, find that the South Carolina Supreme Court would not uphold the subject Settlement Agreement as against the insurer.

■ Further, it is unnecessary for a district court to certify a question of law to a state court where, as here, the district court's supervisory court of appeals has already determined the issue of unsettled state law. *See Reiser v. Residential Funding Corp.,* 380 F.3d 1027, 1029 (7th Cir.2004) (noting that "[a] decision by a state's supreme court terminates the authoritative force of [Seventh Circuit] decisions interpreting state law, for under *Erie* [the Seventh Circuit's] task in diversity jurisdiction is to predict what the state's highest court will do. Once the state's highest court acts, the need for prediction is past."); *Lee v. Frozen Food Express, Inc.,* 592 F.2d 271 (5th Cir.1979) ("Regardless of any ambiguity the plaintiffs may find in Louisiana cases to justify such a certification, there is no ambiguity as to this Court's view of Louisiana law because the legal issue has been squarely resolved against plaintiffs' precise arguments by

two recent Fifth Circuit decisions. \* \* \* Once a panel of this Court has settled on the state law to be applied in a diversity case, the precedent should be followed by other panels without regard to any alleged existing confusion in state law, absent a subsequent state court decision or statutory amendment which makes this Court's decision clearly wrong."). As such, even though South Carolina courts have not squarely addressed this issue, the court is bound by the Fourth Circuit's interpretation of the content of unsettled state law.

In *Stonehenge,* the Fourth Circuit directly held that South Carolina courts would not uphold settlement agreements in which the insured confesses a judgment for an amount of which he has no intention of being personally liable, while purporting to leave the insurer's obligation to indemnify him for such amount intact. Because the Fourth Circuit has predicted what South Carolina's highest court would do, this court is bound to follow such prediction. *Federal Deposit Ins. Corp. v. Fagan,* 459 F.Supp. 933, 935 (D.S.C.1978) (district court was bound by Court of Appeals decision that South Carolina law did not bar a creditor who did not timely file a claim, notwithstanding that such decision was based on erroneous notes of official Code reporter listing newly enacted "forever barred" provision as a successor to "notice" provision of earlier code). Accordingly, certification to the Supreme Court of South Carolina is unnecessary.

Defendant protests that *Stonehenge* did not attempt to predict what the Supreme Court of South Carolina would say on the issue, but rather, relied entirely on *Hitt,* a case interpreting Virginia law. As such, Defendant claims that the Fourth Circuit in *Stonehenge* "missed that point, and therefore made no effort to determine South Carolina law." (Reply at 2.) Defendant argues that this point is still undecided within South Carolina and should be certified. The court is in no position to adopt Defendant's reasoning as to do so would be to disregard the clear precedent set by our supervisory court. *Fagan,* 459 F.Supp. at 934 ("[D]istrict court is bound by decisions of the Court of Appeals for the circuit until such decisions are changed."); *U.S. v. Poston,* 312 F.Supp. 587 (D.S.C.1970) (holding that a district court has absolute duty to follow the rulings of the United States Court of Appeals for the circuit in which the district court sits).

### *CONCLUSION*

For the foregoing reasons, it is hereby **ORDERED** that Plaintiff St. Paul Travelers is under no duty to indemnify Johnny A. Payne d/b/a Sea Coast Construction for his Confession of Judgment entered September 8, 2005. To the extent not inconsistent with this **ORDER.** Plaintiff's Motion for Summary Judgment is therefore **GRANTED.**

**AND IT IS SO ORDERED.**